

# UNITED STATES DISTRICT COURT
for the
Eastern District of California



In the Matter of the Search of )
426 Washington Avenue )
West Sacramento, California (Subject Premises) ) Case No. 2:18-SW-0825 AC
including any Apple iPhones and HTC wireless )
telephones located therein ("Premises Devices"). )
) **SEALED**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-2, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
  ☑ evidence of a crime;

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §111(a) | Assault on a Federal Officer |
| 18 U.S.C. § 922(g) | Felon in possession of firearm |
| 18 U.S.C. § 924(c) | Possession of a firearm in furtherance of drug trafficking |
| 21 U.S.C. § 841(a)(1) | Distribution of controlled substances |
| 21 U.S.C. § 843(b) | Use of a telephone to commit a felony drug offense |

The application is based on these facts:
**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

  ☑ Continued on the attached sheet.

_____
Applicant's signature

John W. Ogden, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/28/18

_____
Judge's signature

City and state: Sacramento, California

Allison Claire, U.S. Magistrate Judge
*Printed name and title*

I, John W. Ogden ("Affiant"), having been duly sworn, state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of applications under Rule 41 of the Federal Rules of Criminal Procedure for:

   a. a warrant authorizing the examination of two wireless telephones—specifically, two Apple iPhones, as further described in Attachment A1 ("Subject Devices")—that currently are in law enforcement possession, and the extraction from the Subject Devices of electronically stored information described in Attachment B; and

   b. a warrant authorizing the search of the premises known as 426 Washington Avenue, West Sacramento, California ("Subject Premises"), and including any Apple iPhones and HTC wireless telephones located therein ("Premises Devices," together with the Subject Devices, "Devices"), as further described in Attachment A2, and the seizure and examination of the Premises Devices, and the extraction from the Premises Devices of electronically stored information described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation and have been since February 2009. I presently am assigned to the Sacramento Division. I have attended more than 1,000 hours of training in various aspects of criminal investigations, including the investigation of drug trafficking organizations. I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request a search warrant. My training and experience includes the examination of wireless telephone devices.

3. The facts and information contained in this affidavit are based on, among other things, my knowledge and observations, my training and experience, a review of evidence, and information from witnesses and other law enforcement personnel.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter. Except where otherwise

indicated, communications are reproduced in summary and in part. Where dates, figures, times, and/or calculations are set forth in this affidavit, they are approximate, unless noted otherwise.

5. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to search the Subject Devices, further described in Attachment A1, and Subject Premises, including the Premises Devices, further described in Attachment A2, for evidence and instrumentalities of violations of federal law, including Title 18, United States Code, Sections 111(a) (assault on a federal officer), 922(g) (felon in possession of firearm), and 924(c) (possession of a firearm in furtherance of drug trafficking), and Title 21, Sections 841(a)(1) (distribution of controlled substances), 843(b) (use of a telephone to commit a felony drug offense), and 846 (conspiracy to possess with intent to distribute controlled substances).

6. The applied-for warrants would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## II. PROBABLE CAUSE

7. On May 24, 2018, a federal grand jury sitting in the Eastern District of California returned an indictment charging Dustin Joseph Albini, aka Bredt Dustin Joseph Ablini, ("Albini") with one count of assault on a federal officer, in violation of 18 U.S.C. § 111(a)(1). *See* Indictment, *United States v. Albini*, 2:18-cr-101-JAM. In summary, the alleged conduct underlying the charge in the indictment is as follows:

    a. On July 8, 2015, state and federal law enforcement officers executed a federal search warrant with respect to a large-scale marijuana grow operation in Modoc County, California.

    b. During the execution of the search warrant, law enforcement officers encountered protestors and, in a few instances, physical altercations resulted.

    c. One of those instances involved Albini and a law enforcement officer employed by the United States Department of Interior, Bureau of Land Management ("BLM Agent"), who was involved in executing the search warrant. During the altercation, as alleged in the indictment, Albini grabbed the BLM Agent's testicles and bit the BLM Agent's leg.

8. On September 4, 2018, your Affiant conducted surveillance at the Subject Premises and observed Albini arrive at the address in a Ford truck registered to Albini. Your Affiant also observed Albini travel from his vehicle into the Subject Premises and make multiple trips between the Subject Premises and waste receptacles on the street in front of the Subject Premises.

9. On September 5, 2018, law enforcement, including your Affiant, executed the arrest of Albini on the pending indictment referenced above in paragraph 7 of this affidavit. On that date, law enforcement observed Albini approaching his Ford truck, which was parked in front of the Subject Premises. After Albini entered the driver's side of the vehicle, law enforcement approached the vehicle to effect the arrest.

10. During the arrest, law enforcement viewed in plain sight a handgun located on the front driver's side seat of Albini's vehicle—a .45 caliber Colt MK IV. Your Affiant secured the firearm and determined that it was loaded with six rounds (none were in the chamber). A further search of the vehicle uncovered a second handgun under the front driver's side seat—a .40 caliber Glock 27. This handgun was loaded with eight rounds (none were in the chamber). Law enforcement also located approximately $4,350 in cash under a shirt on the front passenger's seat of the vehicle and a backpack on the vehicle's center console. Inside the backpack, law enforcement found four plastic baggies containing suspected marijuana and over 600 cartridges/vials containing an amber-colored liquid suspected to be BHO (also known as butane hash oil or butane honey oil), which is a marijuana extract. As of the writing of this affidavit, testing of the suspected marijuana and BHO has not been completed. Photographs of the suspected marijuana and a portion of the cartridges/vials containing suspected BHO are below.





11. During a search of Albini's person, law enforcement found the Subject Devices and approximately $420 in cash.

12. Following Albini's arrest, your Affiant interviewed Albini's wife, Susan Albini, in the driveway of the Subject Premises. During the interview, Susan Albini stated, among other things:

    a. She lives at the Subject Premises and Albini stays at the Subject Premises from time to time. The Subject Premises is not Albini's permanent residence. She does not know if Albini has a permanent residence.

    b. Albini does not have a job.

    c. The firearms law enforcement found in Albini's vehicle belong to Albini.

    d. Albini uses drugs but she does not know if Albini sells drugs.

13. Your Affiant also interviewed Albini at the Sacramento County Sheriff's Office, following his arrest. Prior to the interview, Albini was advised of his rights using an Advice of Rights form (FD-395), which Albini signed. During the interview, Ablini stated, among other things:

    a. He worked at the marijuana grow operation in Modoc County that was "raided" by law enforcement. He was paid to build greenhouses at the marijuana grow operation.

b. On the day that law enforcement executed the search warrant at the grow operation, Albini was involved in physical altercations with law enforcement, including a federal officer. There are recordings of what occurred on cellular telephones. He personally has some video recordings on an old cellular telephone.

14. Your Affiant obtained a copy of a recorded conversation between Albini and Susan Albini that occurred at the Sacramento County Main Jail on September 6, 2018. Prior to the conversation, the participants were notified that the conversation would be recorded. During the conversation, Albini states to Susan Albini that he has two cellular telephones with recordings of the altercation that is the subject of the indictment referenced above in paragraph 7 of this affidavit. He explains that one of the telephones is an Apple iPhone that is located "in the house." Albini states that the other telephone is an HTC. He says that he cannot access the HTC device and will not say where it is located. Later in the conversation, Albini tells Susan Albini that the cellular telephones are not to "leave your hands," unless he tells her to give them to his attorney.

15. On September 13, 2018, a federal grand jury sitting in the Eastern District of California returned an indictment charging Albini with one count of possession of firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). *See* Indictment, *United States v. Albini*, 2:18-cr-183-JAM. This charge is based on the handguns law enforcement recovered as detailed in paragraph 10 of this affidavit.

16. Based on my training and experience, consultations with other law enforcement personnel, and the items found on Albini's person and in his vehicle at the time of his arrest, including the baggies of suspected marijuana, the approximately 600 cartridges/vials of suspected BHO, the thousands of dollars in cash, and the two handguns, I believe that Albini is involved in the illegal distribution of controlled substances.

17. Based on my training and experience, and consultations with other law enforcement personnel, I know the following to be true:

    a. Persons involved in illegally distributing controlled substances ("drug distributors") and their customers use wireless telephones to communicate with one another by both voice and text message. Wireless telephones preserve in their memory a history of

incoming, outgoing, and missed calls, which can lead to evidence of the telephone numbers of other drug distributors and the dates and times that they and/or the wireless telephone user dialed one another's telephones. Wireless telephones also contain in their memory a telephone book. This allows the user to store telephone numbers and other contact information. The information stored in a wireless telephone used by a drug distributer is evidence of the associations of the user, some of which is related to his or her illegal conduct.

b. Wireless telephones also contain in their memory text messages sent, received, and drafted by the wireless telephone user. The text message history of a drug distributor's wireless telephone can contain evidence of illegal drug distribution because it shows the communications or planned communications with the drug distributor's source of supply and/or customers. Wireless telephones also have a voicemail function that allows callers to leave messages for each other. These messages can contain evidence both of a drug distributor's association with his or her suppliers and customers and possibly their joint criminal activity. Wireless telephones also can contain other user-entered data files such as "to-do" lists. Wireless telephones can also contain photographic and video files, which can be evidence of criminal activity when the user takes pictures and videos of evidence of a crime.

c. Drug distributors often use wireless telephones and their email, text messaging, and voicemail functions to conduct their business. Such individuals must often rely on others to obtain drugs and to help obtain, market, distribute, and/or protect drugs. To achieve some of the aforementioned objectives, drug distributors will often, among other methods, have a courier transport drugs or drug proceeds or ship drugs or drug proceeds through the mail or by common carrier. Evidence related to the identities of these co-conspirators are often maintained on wireless telephones.

d. Drug distributors often maintain records listing their distribution activities. These records are kept to track the ordering, purchasing, storage, distribution, and transportation of controlled substances. After drugs are sold, records often remain for

long periods of time to memorialize past transactions, track the status of accounts receivable and payable, and record the names and telephone numbers of suppliers, customers, and co-conspirators. These records are often maintained as electronic or digital data on wireless telephones.

### III. TECHNICAL TERMS

18. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a

screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory

card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

    f. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

    g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

    h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

19. Based on my training, experience, and research, I know that the Subject Devices and most likely the Premises Devices have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used each device.

## IV. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet typically are stored for some period of time on the device. This information can sometimes be recovered with forensic tools.

21. <u>Forensic evidence</u>. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrants, but also forensic evidence that establishes how the wireless telephones were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence may be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a wireless telephone is evidence may depend on other information stored on the wireless telephone and the application of knowledge about how a wireless telephone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

  f. I know that, when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

22. <u>Necessity of seizing or copying entire storage media (applicable to the Premises Devices)</u>. In most cases, a thorough search of information that might be stored on wireless telephones often requires the seizure of the physical storage media and later off-site review consistent with the warrant. It is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the device's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

  a. <u>The time required for an examination</u>. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a wireless telephone has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take

11

weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

      b. <u>Technical requirements</u>. Wireless telephones can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of device hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

      c. <u>Variety of forms of electronic media</u>. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

23. <u>Nature of examination</u>. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrants, and would authorize a later review of the media or information consistent with the warrants. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

24. <u>Manner of execution (applicable to the Subject Devices)</u>. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

25. I submit that this affidavit supports probable cause for

      a. a search warrant authorizing the examination of the Subject Devices described in Attachment A1 to seek the items described in Attachment B; and

12

b. a search warrant authorizing the search of the Subject Premises and the seizure and examination of the Premises Devices described in Attachment A2 to seek the items described in Attachment B.

## **REQUEST FOR SEALING**

26. I further request that the Court order that all papers in support of this application, including the affidavit and search warrants, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee, continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

_____
John W. Ogden
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on:

_____
The Honorable Allison Claire
UNITED STATES MAGISTRATE JUDGE

_____
Approved as to form by AUSA MATTHEW THUESEN

13

## ATTACHMENT A1

*Property to be searched*

The devices to be searched are (a) a white Apple iPhone, IMEI: 356601080975670, Model A1662; and (b) a white Apple iPhone, FCC ID: BCG-E3085A, Model A1660 ("Subject Devices"). The Subject Devices currently are located at the Sacramento FBI Evidence Control Room, 2001 Freedom Way, Roseville, California.

This warrant authorizes the forensic examination of the Subject Devices for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT A2

*Property to be searched*

The property to be searched is located at 426 Washington Avenue, West Sacramento, California ("Subject Premises"), including any Apple iPhones and HTC wireless telephones located therein ("Premises Devices"). The Subject Premises is further described as a beige-colored, single-story rambler style structure with the number "426" affixed to the right side of the front door.



This warrant authorizes the forensic examination of the Premises Devices for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

*Particular things to be seized*

1. All records and information on the Subject Devices described in Attachment A1 and Premises Devices described in Attachment A2 (collectively, "Devices") that relate to violations of Title 18, United States Code, Sections 111(a) (assault on a federal officer), 922(g) (felon in possession of firearm), and 924(c) (possession of a firearm in furtherance of drug trafficking), and Title 21, Sections 841(a)(1) (distribution of controlled substances), 843(b) (use of a telephone to commit a felony drug offense), and 846 (conspiracy to possess with intent to distribute controlled substances) (collectively, "Subject Offenses"), those violations involving Dustin Joseph Albini, aka Bredt Dustin Joseph Albini, aka Dustin Joseph Albini-Bredt, including records and information relating to:

   a. A marijuana grow operation in Modoc County, California, including any law enforcement interaction occurring in or around the grow operation;

   b. Assault of law enforcement personnel;

   c. The manufacture, acquisition, distribution, and sale of controlled substances;

   d. The acquisition, possession, and disposition of firearms;

   e. The identities and locations of co-conspirators, victims, and others involved in or affected by any of the Subject Offenses;

   f. Efforts to avoid detection by law enforcement in connection with the Subject Offenses;

   g. Address books, appointment books, calendars, and schedules;

   h. Who used, owned, or controlled the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," text messages, instant messaging logs, photographs, and correspondence;

   i. How and when the Devices were accessed or used to determine the chronological context of device access, use, and events relating to crimes under investigation and to the user(s) of the Devices;

j. The Devices' user's or users' state(s) of mind as related to the Subject Offenses;

k. Counter-forensic programs (and associated data) that are designed to eliminate data from the Devices;

l. Passwords, encryption keys, and other access devices that may be necessary to access the Devices;

m. Documentation and manuals that may be necessary to access the Devices or to conduct a forensic examination of the Devices;

n. Internet Protocol addresses used by the Devices;

o. Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user(s) entered into any Internet search engine, and records of user-typed web addresses; and

p. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may be stored, including any form of electronic storage and any photographic and videographic form, and include communications in whatever form and however stored (including, but not limited to, text messages and emails).

# UNITED STATES DISTRICT COURT
for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of )<br>426 Washington Avenue )<br>West Sacramento, California (Subject Premises) )<br>including any Apple iPhones and HTC wireless telephones )<br>located therein ("Premises Devices"). )<br>) | Case No. 2:18-SW-0825 AC<br><br>**SEALED** |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A-2, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____Oct. 12, 2018_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____9/28/18 9:00a_____     _____[signature]_____
                                                                                                 *Judge's signature*

City and state:       Sacramento, California                    Allison Claire, U.S. Magistrate Judge
                                                                                                 *Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

### Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____  _____
Signature of Judge                                Date